UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HERMAN ARNOLD and MARLA ARNOLD,

    Plaintiffs,

                                Case No. 1:07-CV-881

v.                                        Hon. Gordon J. Quist

GMAC, LLC d/b/a GMAC FINANCIAL,

    Defendant.
_____/

## OPINION

Herman and Marla Arnold (the "Arnolds") filed suit against GMAC, LLC, ("GMAC") and Gates Chevy World ("Gates") in Berrien County District Court, State of Michigan, alleging various claims arising out of their lease of an automobile and reporting of their payment history with respect to that lease. The case was removed to this Court, and the Arnolds' claims against Gates have been dismissed. Remaining are the Arnolds' claims that GMAC violated its obligations as a furnisher of credit under the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681s-2, and the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901, *et seq.*, in reporting their payment history to credit reporting agencies. The Court has before it GMAC's Motion for Summary Judgment.[1] For the following reasons, the Court will grant summary judgment in GMAC's favor.

## Facts

The facts necessary to this decision are undisputed. On June 27, 2005, the Arnolds executed a lease of a 2005 Chevrolet Silverado with Gates. (Pl's Resp. to Mot. for Summ. J., Ex.

---

[1] GMAC filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and/or for summary judgment under Fed. R. Civ. P. 56. Because it is necessary to consider material outside of the pleadings to resolve the various issues presented, the Court will treat the motion as a motion for summary judgment.

A.) The lease was financed through GMAC.  The lease was for a term of 48 months with monthly payments of $370.50.  The Arnolds allege that the lease was for 15,000 miles per year with excess mileage charged at a rate of $0.15 per mile.  The copy of the lease provided by the Arnolds does in fact state that the Arnolds would be charged for mileage in excess of 15,000 miles per year at a rate of $0.15 per mile.  (*Id.*)  However, in the copy of the lease agreement GMAC has provided, the typewritten numbers of 15,000 and $0.15 have been crossed out and replaced with handwritten notations of 12,000 miles per year with excess mileage charged at a rate of $0.20 per mile. (Def.'s Br. in support of Mot. for Summ. J., Ex. A.)  Next to this alteration, and next to similar alterations elsewhere in the lease agreement, purport to be the initials of both Arnolds.  (*Id.*)  The Arnolds allege that they never initialed these changes and that the changes to the lease agreement were made unbeknownst to them and without their authorization.  GMAC responds that it has no knowledge of whether the Arnolds were aware of the changes or whether their initials are valid, but that a payment of $370.50 reflects a low-mileage lease.

Regardless of whether the alterations were valid, the Arnolds' next lease payment was due on July 27, 2005.  When GMAC did not receive payment by August 10, 2005, it sent a letter to the Arnolds informing them that their payment was past due.  (Br. in support of Mot. for Summ. J., Ex. B.)  The Arnolds sent a check dated August 23, 2005, to GMAC for this payment.  (Br. in support of Mot. for Summ. J., Ex. C.)  GMAC received the check on August 25, 2005.  (Br. in support of Mot. for Summ. J., Ex. E.)   The check did not post to the Arnolds' account until August 26, 2005, and did not clear the bank until August 29, 2005.  (Br. in support of Mot. for Summ. J., Ex. F.)

GMAC subsequently informed credit reporting agencies that the Arnolds had made one payment 30 days or more past due.  The Arnolds contacted GMAC and asked it to remove the negative mark from their credit report.  GMAC then discovered that the account numbers on the

original lease contract had changed because of the execution of a subsequent lease contract to reflect the correct dealer. (Br. in support of Mot. for Summ. J., Ex. H.) While GMAC maintains that the change in the Arnolds' account number did not affect the timeliness of their payment, GMAC wrote to the Arnolds on September 12, 2005, and informed them that GMAC had notified the credit reporting agencies that their account was current and with perfect payment history. (Br. in support of Mot. for Summ. J., Ex. I.) However, as of October 5, 2005, the Arnolds' credit history (as reported by Equifax) still showed the Arnolds' payment history with respect to the lease as having one payment 31-60 days past due. (Pl.'s Resp. to Mot. for Summ. J., Ex. D.) Additionally, in September 2005, the Arnolds applied for a mortgage through Huntington and were told that they could possibly be denied credit or pay a higher interest rate for a variety of reasons, one of which included "an adverse vehicle credit report." (Pl.'s Resp. to Mot. for Summ. J., Ex. J.) The Arnolds allege that the negative credit history remained on their credit report until at least January of 2006. Marla Arnold also states in her deposition that she mailed a note to one of the credit reporting agencies in November of 2005 to dispute the accuracy of their credit history. (Pl.'s Resp. to Mot. for Summ. J., Ex. K.) However, there is no evidence that GMAC ever received notification from a credit reporting agency regarding a dispute about the Arnolds' payment history.

**Analysis**

*Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a

light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

*Fair Credit Reporting Act*

Congress passed the FCRA

> to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

15 U.S.C. § 1681(b).  To that end, the FCRA places obligations on consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 782 (W.D. Ky. 2003).  With respect to the allegations in this case, the parties agree that GMAC is a furnisher of information to credit reporting agencies and, as such, its obligations are laid out in 15 U.S.C. § 1681s-2.  That section delineates two categories of responsibility.  Subsection (a) imposes broad duties upon furnishers of information to provide consumer reporting agencies with accurate information. *Id.*  Subsection (b) imposes duties to conduct investigations and promptly report any inaccurate information upon notice of a dispute by the consumer. *Vasquez-Garcia v. Trans Union De Puerto Rico*, 222 F.Supp.2d 150, 154 (D. P.R. 2002).  Since the Arnolds' complaint invokes subsections (a) and (b), the Court will analyze each in turn.

GMAC contends that the Arnolds' claim under § 1681s-2(a) fails as a matter of law because the FCRA does not provide a private cause of action for violations of the obligations contained in subsection (a).  GMAC's argument is correct because § 1681s-2(c) provides a limitation on liability

4

for violations of § 1681s-2(a) by stating that the FCRA's broad provisions for civil liability contained in 15 U.S.C. § 1681n and 1681o do not apply to the obligations enumerated in § 1681s-2(a). Moreover, 1681s-2(d) "provides that the requirements imposed by subsection (a) are only enforceable by government officials." *Id.* Thus, the Arnolds cannot bring a cause of action for GMAC's alleged violation of § 1681s-2(a), and the Court will grant summary judgment in GMAC's favor on this claim. *Id.*; *Aklagi v. Nationscredit Fin. Serv. Corp.*, 169 F.Supp.2d 1186, 1192 (D. Kan. 2002).

Similarly, GMAC argues that the FCRA does not provide a cause of action for violations of the obligations contained in § 1681s-2(b). While Courts have split on whether there is a private cause of action for violations of § 1681s-2(b), the majority of courts have concluded that there is a private cause of action. *Compare Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002) (§ 1681s-2(b) creates a private cause of action); *and Aklagi*, 196 F.Supp.2d at 1193 (same); *and Dornhecker v. Ameritech Corp.*, 99 F.Supp. 2d 918 (N.D. Ill. 2000) (same); *and Campbell v. Baldwin*, 90 F.Supp.2d 754 (E.D. Tex. 2000) (same); *with Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496 (W.D. Tenn. 1999) (concluding that there is no private cause of action for violations of § 1681s-2(b)). The Court will assume, albeit without deciding it, that there is a private cause of action for violations of § 1681s-2(b). Nevertheless, the Arnolds' claim still fails.

Under the plain language of the statute, the obligations contained in § 1681s-2(b) arise "[a]fter receiving notice pursuant to 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency[.]" 15 U.S.C. § 1681s-2(b). The notice pursuant to § 1681i(a)(2) that triggers the obligations of § 1681s-2(b) is the notice a credit reporting agency must send to furnishers of credit information

upon receiving a dispute from a consumer. Therefore, an essential element of a cause of action under § 1681s-2(b) is that the furnisher of credit information received notice of a dispute from a *credit reporting agency*. *Young v. Equifax Credit Info. Serv., Inc.*, 294 F.3d 631 (5th Cir. 2002); *Whisenant v. First Nat'l Bank & Trust Co.*, 258 F.Supp.2d 1312, 1316 (N.D. Okla. 2003) ("Courts have consistently held that a furnisher's duty under § 1681s-2(b) is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency.") Notification from the consumer alone is insufficient. *Lowe v. Surpas Res. Corp.*, 253 F.Supp.2d 1209, 1253-54 (D. Kan. 2003) (collecting cases); *Stafford*, 262 F.Supp.2d at 784; *Aklagi*, 196 F.Supp.2d at 1193; *Elmore v. North Fork Bancorporation, Inc.*, 325 F.Supp.2d 336, 340 (S.D. N.Y. 2004).

The Arnolds' claim under § 1681s-2(b) fails because they have produced no evidence that GMAC ever received notification of a dispute from a credit reporting agency. Without notification from a credit reporting agency, the obligations contained in § 1681s-2(b) were never triggered. Although GMAC had notice of the dispute from the Arnolds themselves, the statute and the aforementioned cases make clear that notice from the Arnolds is insufficient. While Marla Arnold stated during her deposition that she sent a note to one of the credit reporting agencies to dispute the negative credit mark, there is no evidence the credit reporting agency received the dispute or ever sent notification of the dispute to GMAC pursuant to § 1681i(a)(2). The parties have had adequate time for discovery, so summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Thus, the Court will grant summary judgment in GMAC's favor on the Arnolds' claim under § 1681s-2(b).

*Michigan Consumer Protection Act*

GMAC argues that the Arnolds' claim under the MCPA is preempted by the FCRA. § 1681t(b)(1)(F) states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to subject matter regulated under . . . section § 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . ." While there is considerable dispute about the extent of the FRCA's preemption of state law claims, *see Stafford*, 262 F.Supp.2d at 784-89 (providing an extensive discussion of the different preemption provisions, their varying interpretations, and their application to different types of state law claims), it is clear that when a state law imposes distinct duties with respect to the subject matter regulated by § 1681s-2, it is preempted, *Riley v. Gen. Motors Acceptance Corp.*, 226 F.Supp.2d 1316, 1322 (S.D. Ala. 2002). The Court need not engage in an extensive discussion of how 1681t(b)(1)(F) preempts different types of state law claims, however, because the Arnolds' allegations under the MCPA are founded solely on GMAC's actions in reporting the Arnolds' payment history. Since the reporting of credit information is the subject matter regulated by § 1681s-2, the Arnolds' MCPA claim is preempted. Additionally, the Arnolds concede that their MCPA claim is preempted. Thus, the Court will grant summary judgment in GMAC's favor on the Arnolds' MCPA claim.

*Leave to Amend*

Perhaps anticipating this result, in their response to GMAC's motion for summary judgment, the Arnolds request leave to amend the complaint to include breach of contract, negligence, and violation of the Consumer Leasing Act. Federal Rule of Civil Procedure 15 provides that the Court shall grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Factors affecting this decision include "undue delay in filing, lack of notice to the opposing party, bad faith by the

moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of amendment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 346 (6th Cir. 2007). However, because the request to amend the complaint is beyond the December 14, 2007, deadline set in the Court's scheduling order, the Arnolds must also demonstrate "good cause" to modify the scheduling order. Fed. R. Civ. P. 16(b)(4). The Arnolds can establish good cause "by showing that despite their diligence they could not meet the original deadline." *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). In addition to the "good cause" requirement, a "district court also is required to evaluate prejudice to the opponent before modifying the scheduling order." *Id.* at 909.

The Arnolds have not demonstrated good cause for modifying the scheduling order. Both the discovery deadline and the dispositive motion deadline have passed. Morever, the Arnolds did not seek leave to amend until responding to GMAC's motion for summary judgment. The Arnolds do not give any reason for the delay in asserting these new claims or even attempt to justify their request under the "good cause" standard articulated in Rule 16(b)(4). Additionally, GMAC would suffer prejudice if the Court granted leave to amend at this late stage of the litigation. "At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). Like *Duggins*:

> [The Arnolds] delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff[s] propose[] none. Allowing amendment at this late stage in the litigation would create significant prejudice to the defendant[]. . . ."

*Id.* Therefore, because the Arnolds have not established "good cause" for modifying the scheduling

order and because GMAC would suffer prejudice, the Court will deny the Arnolds leave to amend their complaint to add causes of action for breach of contract, negligence, and violations of the Consumer Leasing Act.

## Conclusion

The Arnolds' FCRA claims fail because 15 U.S.C. § 1681s-2(a) does not provide a private cause of action.  Although the Court will assume, without deciding it, that there is a private cause of action for violations of 15 U.S.C. § 1681s-2(b), the Arnolds' claim still fails because they have produced no evidence that GMAC ever received notice of a dispute from a credit reporting agency, which is necessary to trigger GMAC's obligations under § 1681s-2(b).  The Arnolds' MCPA claim is preempted by the FCRA, and the Court will deny the Arnolds leave to amend the complaint.

A separate Order will issue.


Dated: July 17, 2008                                     /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE